**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| NEURAL AI, LLC,<br><br>Petitioner,<br><br>v.<br><br>COREWEAVE, INC.,<br><br>Respondent. | Misc. Case No. 7:26-mc-323<br><br>Principal case pending in Western District of Texas, Civil Action No. 7:24-cv-00221-LS-DTG |

**NEURAL AI'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA SERVED ON THIRD-PARTY COREWEAVE, INC.**

**TABLE OF CONTENTS**


I. FACTUAL BACKGROUND ........ 2

A. The Underlying Litigation ........ 2

B. The Rule 45 Subpoenas to CoreWeave and CoreWeave's Continued Non-Compliance. ........ 3

II. THE COURT HAS JURISDICTION BECAUSE THE PLACE OF COMPLIANCE IN AUSTIN, TX IS PROPER. ........ 5

III. COREWEAVE MUST PRODUCE DOCUMENTS RESPONSIVE TO THE SUBPOENA. ........ 6

A. The Requested Discovery Goes to the Heart of NAI's Infringement Claims ........ 7

B. CoreWeave Has Not Substantiated Burden and NAI Offered Narrower Alternatives. ........ 9

IV. CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*611 Carpenter LLC v. Atlantic Casualty Ins. Co.*,
2024 WL 1977160 (W.D. Tex. April 30, 2024) ....7, 9

*Conservation L. Found., Inc. v. Equilon Enters. LLC*,
2025 WL 2821238 (D.R.I. Oct. 3, 2025) ....6

*FG SRC LLC v. Xilinx, Inc.*,
2022 WL 22997130 (D. Del. Apr. 11, 2022) ....8

*Flores v. Lowes Home Centers, L.L.C.*,
2023 WL 3959399 (W.D. Tex. June 12, 2023) ....6, 7

*Kim v. NuVasive, Inc.*,
2011 WL 3844106 (S.D. Cal. Aug. 29, 2011) ....8

*Lucent Technologies, Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ....8

*Meritage Homes, LLC v. AIG Specialty Ins. Co.*,
2024 WL 221448 (W.D. Tex. Jan. 18, 2024) ....5

*Neural AI, LLC v. NVIDIA Corp.*,
Case No. 7:24-cv-00221-LS-DTG (W.D. Tex.) ....1, 2, 5

*Trs. of Bos. Univ. v. Everlight Elecs. Co.*,
2014 WL 12792496 (D. Mass. Sept. 8, 2014) ....6

*Velocity Pat. LLC v. FCA US LLC*,
2017 WL 11893112 (N.D. Ill. Nov. 2, 2017) ....6

*Waller v. Jet Specialty, Inc.*,
2024 WL 7050192 (W.D. Tex. Nov. 19, 2024) ....7

## Rules

Fed. R. Civ. P. 26 ....6

Fed. R. Civ. P. 26(b)(1) ....6

Fed. R. Civ. P. 45 ....3, 4, 7, 9

Fed. R. Civ. P. 45(c)(2)(A) ....5, 6

Fed. R. Civ. P. 45(d)(2)(B)(i) ....................5, 6, 7

This motion arises from *Neural AI, LLC v. NVIDIA Corp.*, Case No. 7:24-cv-00221-LS-DTG (W.D. Tex.) (the "Underlying Action"), a patent-infringement action pending in this District. In the Underlying Action, Neural AI, LLC ("NAI") alleges that NVIDIA Corporation ("NVIDIA") infringes through its GPU-accelerated hardware and software: U.S. Patent No. 8,648,867 (the "'867 Patent"), Reissue Patent No. RE48,438 (the "'438 Patent"), and Reissue Patent No. RE49,461 (the "'461 Patent") (collectively, the "Asserted Patents"). *See* Exhibits 1–4.

NVIDIA has made customer deployment central to the Underlying Action, disputing whether customers configure and use the accused products as NAI alleges and insisting NAI must obtain customer evidence to prove indirect infringement. Respondent CoreWeave, Inc. ("CoreWeave") is NVIDIA's formal cloud-services partner, deploying NVIDIA GPU infrastructure at scale and giving customers access to NVIDIA-powered systems. *See* Exhibits 14–17. CoreWeave holds the customer and deployment evidence NVIDIA says NAI needs, and its refusal to produce that evidence leaves NAI without practical means to prove the claims NVIDIA insists require such evidence. *See* Exhibits 13–15.

NAI served CoreWeave with a document subpoena on October 15–16, 2025, containing twenty requests, and a deposition subpoena on June 24, 2026, designating five topics. *See* Exhibits 5–6, 8–9. CoreWeave asserted blanket objections to every request and topic. It produced only 55 publicly available webpages—specification sheets, terms-of-service pages, and marketing materials—and no internal deployment records, configurations, usage data, or engineering documents. *See, e.g.,* Exhibit 21; Laiche Decl. ¶ 26. CoreWeave has produced no witness.

The parties met and conferred beginning July 8, 2026, and NAI identified responsive categories, offered a draft declaration in lieu of broader discovery, and invited revisions or equivalent information. *See* Exhibit 11 at 1, 3; Exhibit 12. CoreWeave acknowledged the offer, promised

proposed edits, and then went silent. It has produced no substantive non-public document, designated no witness, and offered no meaningful counter-proposal. Laiche Decl. ¶ 26.

NAI therefore seeks an order compelling rolling production of nonprivileged documents responsive to Requests 1–20 and a knowledgeable witness on Topics 1–5.

## I. FACTUAL BACKGROUND

### A. The Underlying Litigation

The Underlying Action asserts direct, indirect, and induced infringement of claims 16–19 of the ’867 Patent; claims 1, 3–6, 8–9, 12, 14, 17–18, 21–23, 29–30, 32, 40, 43–44, 46, 48, 51–52, and 55–57 of the ’438 Patent; and claims 21–25 and 27–30 of the ’461 Patent (collectively, the “Asserted Claims”). *See* Exhibits 1, 18. The Asserted Patents teach GPU-accelerated computing systems and methods. *See* Exhibits 2–4.

NAI’s January 20, 2026 Final Infringement Contentions and the Subpoenas identify integrated NVIDIA hardware—including GPUs, supercomputers, and servers—and GPU-accelerated software, including CUDA, cuDNN, TensorRT, and higher-level frameworks, as the Accused Products. *See* Exhibit 18 at 2–9. NAI alleges that NVIDIA encourages customers to combine, configure, and use those products in an infringing manner. *See id.* at 12–13.

NVIDIA disputes that selling the Accused Products establishes customer configuration or deployment as NAI alleges, denies infringement, and disclaims knowledge of customer use. *See* Exhibit 19 ¶¶ 18, 20–23, 87, 131, 171; Laiche Decl. ¶ 24–25. It acknowledges selling the products, partnering with resellers, managed-service providers, and data-center providers, and supporting customers and partners, but has maintained that NAI must obtain deployment evidence from customers and end users. Laiche Decl. ¶ 24–25.

CoreWeave is NVIDIA’s formal partner and a major cloud-infrastructure deployer. It

joined the Cloud Service Provider Program within the NVIDIA Partner Network as a Preferred Partner in September 2020, became NVIDIA's first Elite Cloud Services Provider for compute in July 2021, and in January 2026 announced expanded collaboration to build more than 5 gigawatts of AI factories by 2030, accompanied by NVIDIA's reported $2 billion equity investment in CoreWeave. *See* Exhibits 13–15. NVIDIA described CoreWeave as a cloud platform built on NVIDIA infrastructure and planned for CoreWeave to develop and operate AI factories using NVIDIA technology. Exhibit 15 at 1.

CoreWeave's records concerning configuration, deployment, and use of those products thus bear directly on infringement and on whether NVIDIA induced or contributed to that use.

**B. The Rule 45 Subpoenas to CoreWeave and CoreWeave's Continued Non-Compliance.**

NAI served CoreWeave two Rule 45 subpoenas because CoreWeave possesses evidence directly relevant to NAI's infringement allegations against NVIDIA. The October 15–16, 2025 document subpoena contains twenty requests concerning CoreWeave's deployment and use of NVIDIA GPUs and related software. *See* Exhibits 5–6. The requests seek documents sufficient to show CoreWeave's acquisition, deployment, configuration, and use of NVIDIA hardware and software, including agreements, configuration files, communications, revenue and usage data, and engineering documentation bearing on whether and to what extent NVIDIA's accused products are configured and used in the manner alleged by NAI in the Underlying Action. *See* Exhibit 5.

CoreWeave served objections on December 1, 2025 and interposed identical boilerplate objections to every request—relevance, proportionality, burden, and availability—without any request-specific analysis or factual support for any claimed burden. *See* Exhibit 7. It asserted that information was "more appropriately obtained from NVIDIA," and also challenged the subpoena's definitions of "NVIDIA GPU-Acceleration Hardware" and "NVIDIA GPU-Acceleration

Software" as overbroad. *See* Exhibit 7.

Although CoreWeave agreed to respond to Requests 1–5, 7–9, 11, and 16, it limited its production to documents sufficient to identify commercial products using NVIDIA hardware or software, while withholding documents sufficient to show the configuration and scope of that use, which is information necessary to establish infringement and damages. *Id.* It also flatly refused to produce any documents responsive to Requests 6, 12, 13, 15, and 17–20. *Id.*

After CoreWeave's December 1, 2025 objections, NAI followed up on March 26, 2026, noting that CoreWeave had produced nothing despite agreeing to search for several requests. *See* Exhibit 20 at 3. CoreWeave replied on April 2 that it was conducting a reasonable search and would produce nonprivileged responsive materials. *Id.* at 2. The parties conferred on April 7, and NAI sent refined definitions and the asserted claims on April 9. *Id.* at 1.

CoreWeave eventually produced 55 documents, but every document was a publicly available webpage from its own website, including instance specifications, shared-responsibility materials, terms of service, and marketing or documentation pages. *See, e.g.,* Exhibit 21; Laiche Decl. ¶ 26. That production does not include any internal deployment records, configurations, customer-usage data, engineering documents, or instructions from NVIDIA—precisely the categories most probative of infringement. *See* Exhibit 7; Laiche Decl. ¶ 26.

On June 24, 2026, NAI served a second Rule 45 subpoena for corporate testimony, designating Austin, Texas as the place of compliance and five topics concerning CoreWeave's use and deployment of NVIDIA software. *See* Exhibits 8–9. CoreWeave never served responses and objections to the deposition subpoena.

On July 8, CoreWeave proposed information about its business, potentially through a declaration, and asked to move the deposition. Exhibit 10 at 6. NAI agreed to discuss alternatives

and moved the date, and the parties conferred again on July 24. *Id.* at 5–7. On August 3, to reduce the burden on CoreWeave, NAI identified questions and categories of records responsive to the subpoena. *Id.* at 4.

NAI went even further. On August 7, NAI offered a draft declaration in lieu of broader discovery and invited CoreWeave to revise it as necessary for accuracy. *See* Exhibit 12. The declaration sought to establish a narrow set of facts concerning the chain of custody for NVIDIA products, principally that CoreWeave acquires NVIDIA hardware and software and deploys and configures those products in its cloud infrastructure without modifying the NVIDIA hardware or software in ways material to the accused functionality. *Id*. CoreWeave acknowledged receipt on August 10 and agreed to provide proposed revisions. *See* Exhibit 10 at 1. On August 11, NAI advised that, absent a resolution, it would seek judicial relief. *Id*. No response. On August 17, 2026, NAI followed up once more. *Id*.

As of the filing of this Motion, CoreWeave has not committed to produce additional non-public documents, designate a witness, supplement the declaration, or propose a timeline. Laiche Decl. ¶ 26. Document discovery in the Underlying Action closed on August 11, 2026, and deposition discovery closes on September 16, 2026. NVIDIA stipulated to extend NAI's third-party discovery-motion deadline to August 18, 2026. Laiche Decl. ¶ 26. Having explained the requests, narrowed the issues, offered less burdensome alternatives, and received nothing substantive in return, NAI seeks the Court's intervention.

## II. THE COURT HAS JURISDICTION BECAUSE THE PLACE OF COMPLIANCE IN AUSTIN, TX IS PROPER.

Rule 45(d)(2)(B)(i) directs a party seeking to compel compliance to apply to "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i); *see also Meritage Homes, LLC v. AIG Specialty Ins. Co.*, 2024 WL 221448, at *4 (W.D. Tex. Jan. 18, 2024). Rule

45(c)(2)(A) permits document production "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." The issuing party is not limited to selecting a place of compliance within 100 miles of the recipient's headquarters. *See, e.g., Conservation L. Found., Inc. v. Equilon Enters. LLC*, 2025 WL 2821238, at *1 (D.R.I. Oct. 3, 2025); *Trs. of Bos. Univ. v. Everlight Elecs. Co.*, 2014 WL 12792496, at *3 (D. Mass. Sept. 8, 2014); *Velocity Pat. LLC v. FCA US LLC*, 2017 WL 11893112, at *4 (N.D. Ill. Nov. 2, 2017).

The subpoenas designate Lexitas Legal, 100 Congress Ave., Ste. 2000, Austin, Texas 78701, within this District, as the place of compliance. CoreWeave's Texas nexus is substantial. CoreWeave operates at least eight data centers in Texas, including multiple facilities within this District: Switch AUS 4 and EdgeConneX AU02 in the Austin area and the 3301 Hibbetts Road facility in Austin. *See* Exhibit 17. CoreWeave's careers webpage further shows that it actively employs personnel throughout Texas, including Data Center Technicians in Afton, Texas; Fleet Engineering Project Managers in Dallas, Texas; Supply Chain & Capacity Operations Inventory Control Specialists in Denton, Texas; and Engineering positions in Plano and Dallas, Texas. *See* Exhibit 16.

Together, CoreWeave's extensive data center operations, substantial employee base, and ongoing business activities across Texas—including facilities within this District—establish that it "regularly transacts business in person" in this District under Rule 45(c)(2)(A). Austin is therefore a proper place of compliance, and this Court is the proper forum under Rule 45(d)(2)(B)(i).

## III. COREWEAVE MUST PRODUCE DOCUMENTS RESPONSIVE TO THE SUBPOENA.

Federal Rule of Civil Procedure 26 permits discovery of any nonprivileged matter relevant to a claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "At the discovery stage, relevancy is broadly construed." *Flores v. Lowes Home Centers, L.L.C.*, 2023 WL 3959399, at *2 (W.D. Tex. June 12, 2023). "'[A] request for discovery should be considered

relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party.'" *Id.*

Where, as here, a non-party refuses discovery in response to a validly issued subpoena, Federal Rule of Civil Procedure 45 provides the Court for the district where compliance is required with broad discretion to compel the production of documents and information from third parties. Fed. R. Civ. P. 45(d)(2)(B)(i). Once a party moving to compel discovery establishes that the materials are relevant, "[t]he party opposing discovery bears the burden of stating 'with specificity the grounds for objecting to the request.'" *Waller v. Jet Specialty, Inc.,* 2024 WL 7050192, at *1 (W.D. Tex. Nov. 19, 2024); *see also 611 Carpenter LLC v. Atlantic Casualty Ins. Co*., 2024 WL 1977160, at *1 (W.D. Tex. April 30, 2024) (granting party's motion to compel non-party subpoena). The non-party "must state with specificity the objection and how it relates to the particular request being opposed, and not merely that it is overly broad and burdensome." *611 Carpenter*, 2024 WL 1977160, at *1.

### A. The Requested Discovery Goes to the Heart of NAI's Infringement Claims.

CoreWeave's documents and testimony are highly relevant. As an NVIDIA partner, CoreWeave deploys NVIDIA hardware and software pursuant to NVIDIA's specifications and technical guidance. Its records therefore show how NVIDIA instructs and expects partners to configure and use the accused products, which is the very third-party evidence NVIDIA says NAI must obtain. Laiche Decl. ¶¶ 24–25. CoreWeave's dual role as NVIDIA partner and cloud provider also gives it evidence on both direct infringement and NVIDIA's knowledge. Its records address customer workloads, NVIDIA software usage, GPU memory allocation, and data movement among GPU, CPU, host, storage, and network memory. That evidence bears directly on the steps of the asserted method claims, and NAI's discovery requests are targeted to those issues.

**The twenty document requests** are bounded and particular, seeking documents "sufficient to show" an identified technical fact.

- **Requests 1–7** identify NVIDIA hardware and software CoreWeave acquires, deploys, and uses; CoreWeave products and services dependent on that technology; its agreements with NVIDIA; and high-level implementation documentation. They establish the products, relationship, and deployment context.

- **Requests 8–11** seek source code, configurations, application-layer invocations, derivative code, and records concerning NVLink, MIG, and GPU orchestration. They show how CoreWeave integrates, customizes, and operates the accused products.

- **Requests 12–16** concern NVIDIA communications, performance and business-value documents, revenue and usage data, benchmarks, and marketing materials. They bear on NVIDIA's knowledge and inducement, commercial use, and the extent of infringement.

- **Requests 17–20** concern third-party software, interactions with other frameworks, and engineering documentation. They illuminate the broader software stack and CoreWeave's understanding of the accused technology.

These requests target whether CoreWeave's systems and customers' workloads perform the asserted method steps and whether NVIDIA's products and support encourage that use. *See Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1321–22, 1333-34 (Fed. Cir. 2009) (a patentee must show all steps of a claimed method to prove indirect infringement and damages "ought to be correlated, in some respect, to the extent the infringing method is used by" directly infringing third parties); *FG SRC LLC v. Xilinx, Inc.*, 2022 WL 22997130, at *5 (D. Del. Apr. 11, 2022) ("[I]t is clear that SRC has a need for information from third parties demonstrating that the parties practice the asserted claims."); *Kim v. NuVasive, Inc.*, 2011 WL 3844106, at *3 (S.D. Cal. Aug. 29, 2011) ("The Court finds the information sought in the subpoenas is relevant to NuVasive's claim of induced infringement and damages therefrom").

**The five deposition topics** track the same subjects as the document requests and seek testimony on CoreWeave's use of NVIDIA software, its customizations, and how GPU-computation results move between memory locations.

- **Topic 1**: the NVIDIA software and libraries CoreWeave uses to perform computations on NVIDIA GPUs;
- **Topic 2**: NVIDIA sample source code CoreWeave uses, in whole or in part;
- **Topic 3**: CoreWeave's customizations and data inputs that alter how NVIDIA software performs computations;
- **Topic 4**: identification of CoreWeave software that uses NVIDIA GPUs to perform computations; and
- **Topic 5**: how output and intermediate GPU computation results are stored, transferred, copied, streamed, written back, returned, accumulated, reused, or otherwise made available between GPU memory and CPU, host, system, storage, display, network, or other memory locations.

The testimony is proportional. It is limited to five topics, the same defined period and U.S. nexus, and information NVIDIA says it cannot provide about CoreWeave's internal configurations.

NAI also offered the draft declaration as a less burdensome alternative and would accept it in lieu of document production and testimony. *See* Exhibits 10, 12. CoreWeave never accepted that alternative, proposed edits, or provided equivalent discovery. The information is central to the dispute, within CoreWeave's possession, and sought through targeted, time-limited requests and topics. CoreWeave should be compelled to produce it.

### B. CoreWeave Has Not Substantiated Burden and NAI Offered Narrower Alternatives.

CoreWeave's rote, undifferentiated objections fail to identify the actual burden—in time, cost, or disruption—associated with any single request or topic, as Rule 45 requires. *See 611 Carpenter LLC*, 2024 WL 1977160, at *1. Repeating the same objections across twenty requests does not establish undue burden or outweigh the discovery's relevance. *See* Exhibit 7.

CoreWeave's principal objection—that the requested information is "available from NVIDIA" or "more appropriately obtained from NVIDIA"—fails. NVIDIA has repeatedly disclaimed knowledge of how its customers, partners, and end users actually deploy and configure

NVIDIA hardware and software. Laiche Decl. ¶¶ 24–25. Indeed, NVIDIA represented to the Court in the underlying action that, to determine how the accused products are deployed in real-world systems, NAI must obtain that information directly from NVIDIA's customers, partners, and end users. *Id.* That is precisely what NAI seeks here. CoreWeave's own deployment records, customer-usage data, engineering documents, workload specifications, and system configurations are uniquely within CoreWeave's possession and are not available from NVIDIA.

CoreWeave's definitions and time-frame objections also do not justify withholding discovery. The definition tracks the Accused Products identified in NAI's infringement contentions (Exhibit 7 at 2–9), and the requests seek documents "sufficient to show" facts about products CoreWeave actually deploys. Exhibit 5. The subpoenas are also limited to September 13, 2018 to the present and U.S.-based or U.S.-directed activity. *Id.* at 17. NAI minimized burden by proposing a draft declaration in lieu of broader discovery and inviting CoreWeave to propose modifications.

CoreWeave has offered no concrete search estimate, production timeline, revised declaration, witness, or counter-proposal. *See* Laiche Decl. ¶ 26. CoreWeave has had nearly a year since the first subpoena and weeks since acknowledging the draft declaration. NAI should not be required to accept an open-ended investigation in place of the discovery NVIDIA says NAI must obtain.

## IV. CONCLUSION

For the foregoing reasons, NAI respectfully requests that this Court (1) compel CoreWeave to produce nonprivileged documents responsive to Requests 1–20 on a rolling basis to be completed within twenty-one (21) days of the Court's order, and (2) compel CoreWeave to designate and produce a knowledgeable witness on Deposition Topics 1–5 within thirty (30) days of the Court's order.

Dated: August 18, 2026

Respectfully submitted,

*<u>/s/ Rocco Magni</u>*
Max L. Tribble
Texas State Bar 20213950
Brian D. Melton
Texas State Bar 24010620
Rocco Magni
Texas State Bar 24092745
Samuel Drezdzon
Texas State Bar 24117374
SUSMAN GODFREY L.L.P.
1000 Louisiana
Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
mtribble@susmangodfrey.com
bmelton@susmangodfrey.com
rmagni@susmangodfrey.com
sdrezdzon@susmangodfrey.com

Tamar Lusztig
NY State Bar 5125174
Emily Portuguese
NY State Bar 5920327
One Manhattan West, 50th Floor
New York, NY 10001
tlusztig@susmangodfrey.com
eportuguese@susmangodfrey.com

Tanner Laiche
WA State Bar 60450
401 Union Street, Suite 3000
Seattle, WA 98101
tlaiche@susmangodfrey.com

*Attorneys for Petitioner Neural AI, LLC*

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on August 18, 2026, a true and correct copy of the foregoing document was served on counsel for CoreWeave, Inc. and all counsel of record in the underlying action.

*/s/ Rocco Magni*
Rocco Magni

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that counsel for Neural AI, LLC conferred in good faith with counsel for non-party CoreWeave, Inc. regarding the issues raised in this Motion, including through a Zoom conference on or about July 24, 2026, and extensive related email correspondence between July 8, 2026 and August 17, 2026. Despite those efforts, the parties were unable to resolve the dispute.

*/s/ Rocco Magni*
Rocco Magni